HARKER et al., Appellants, v. COWIE et al., Respondents.

(161 N. W. 620.)

(File No. 3962.   Opinion filed March 5, 1917.   Rehearing denied May 5, 1917.)

1.  **Quieting Title—Res Judicata—Defense of Former Judgment, Pendency of Former Vacated Suit, Effect—Amendment of Answer as Remedy.**

     Where, in a suit to quiet title, defendant pleaded a judgment of the same court in a former action involving said title,

and plaintiff by supplemental complaint pleaded the vacation of such judgment; it appearing that said former action was still pending, held, that the pendency of the other action was not a complete defense to the present action; there having been joined as defendant in the present action, a grantee of the plaintiff in the former action; that if after such former judgment was vacated, defendants desired to defend the present action upon the ground of pendency of the former action, they should have prayed to amend their answer.

2.  Innocent Purchaser—Abstract Showing Title from Purchaser's Grantor—Attorneys' Opinion—Notice of from Defendant's Grantor, Effect—Statute.

Where a prospective purchaser of realty was given an abstract of title showing two chains of title, and a judgment in favor of the vendor's grantor quieting title in him; which abstract was submitted to competent and worthy attorneys, who assured him that it showed title in his grantor, and he paid full value for his conveyance, and before closing his deal he made a trip to the land, met one B who advised him that he formerly leased the land from a man at Mitchell named Harker, but now understood that it was owned by parties in Armour, saw recently threshed straw stacks thereon and was advised by B that he raised the crop, but made no inquiries of him as to whom he rented the land off, made no effort to find out, nor any inquiries of the Mitchell party; it being undisputed that B farmed the land that year as Harker's lessee; held, that if such purchaser had any right to give consideration to B's statement, to the effect that he understood the land was now owned by some parties at Armour, he was bound to take notice whether there was a party claiming to be owner under Harker (who was defendant in the default judgment referred to in the abstract), or else that B had reference to the party from whom the purchaser was buying. In the one case he was bound to try to ascertain who claimant was and the nature of his claim; in the other case he was bound to know that B's lessor was holding possession through B, although some one at Armour claimed to be owner; that inquiries should have been made as to the Armour party, regardless of B's statement; that having notice that Harker was holding possession and raising crops on the land after entry of said judgment, on which the purchaser was relying, he was bound to make inquiries to ascertain what rights Harker was claiming; that he was not a good faith purchaser under Civ. Code, Sec. 2448, providing that good faith consists in an honest intention to abstain from any unconscientious advantage over another, even through the forms or technicalities of law, together with an absence of information or belief of facts which would render the transaction

unconscientious, and Sec. 2452, providing that every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.

Smith, J., dissenting.

Appeal from Circuit Court, Charles Mix County. Hon. ROBERT B. TRIPP, Judge.

See, also, Cowie v. Harker, 32 S. D. 516, 143 N. W. 895.

Action by Emma W. Harker, and M. W. Harker, as executors of the last will of Joseph Harker, deceased, against A. E. Cowie and John W. Potter, to quiet title to realty. From a judgment in favor of defendants, and from an order denying a new trial, plaintiffs appeal. Reversed.

*J. L. Hannett*, for Appellant.

*French & Orvis*, and *Walker & Gurley*, for Respondent.

(1) To point one of the opinion, Respondents cited. Cyc., Vol. 1, page 21, and cases cited.

(2) To point two of the opinion, Appellants cited: Civ. Code, Secs. 2448, 2452; Betts v. Letcher, 1 S. D. 193; Webber v. Tchetter, 1 S. D. 214; Meyer v. Davenport El. Co., 12 S. D. 175; Schuer v. Alterton, 151 U. S. 602; Bliss v. Waterbury, 27 S. D. 429; Hingtgen v. Thackery, 23 S. D. 334.

Respondents cited: Wade's Law of Notice, 2 ed., p. 286; Cavin v. Middleton, (Iowa) 19 N. W. 805; Trumpower v. Marcey, (Mich.) 52 N. W. 999; Losey v. Simpson, 11 N. J. Eq. 246, 255; Betts v. Letcher, 1 S. D. 182.

WHITING, J. Joseph Harker brought this action to quiet title to a quarter section of farm land in this state. He afterwards died and the present plaintiffs were substituted by order of the court. This action was tried to the court without a jury. Findings and conclusions were entered and judgment rendered in favor of defendants. From such judgment and an order denying a new trial this appeal was taken. The following facts are undisputed: The original fee owner of this land mortgaged the same. Harker claimed title to the land through conveyance from one who had received a sheriff's deed on foreclosure of the mortgage above referred to. Harker received his deed in 1900. Whatever interest, if any, in said land, that did not vest in Harker through the mortgage and its foreclosure, passed by mesne

conveyances from the original fee owner to defendant Cowie, who in 1909 brought an action against Harker to quiet title. Default judgment was rendered in such action on December 7, 1909, which judgment quieted title in Cowie as against Harker. In August, 1910, Cowie gave a deed purporting to convey the land to one Z, who, on September 21, 1910, gave the defendant Potter a deed therto. Before this action was brought Harker made application for the vacation of the default judgment that had been rendered in the action brought by Cowie. This application was granted, but not until after this action was commenced. For information in relation to the terms of the order vacating such judgment, see Cowie v. Harker, 32 S. D. 516, 143 N. W. 895. The action of Cowie v. Harker is still pending.

[1] Defendants plead the judgment in the other action. Plaintiffs, by supplemental complaint, pleaded the vacation of such judgment. Defendants now urge that the pendency of the other action should be treated as a complete defense to this action. The actions were in the same court and of the same nature. In this action there was joined as a party defendant, Potter, the grantee of defendant Cowie, Cowie being plaintiff in the other action. It will be noted that it was the judgment in the other action that was pleaded as a defense. If after such judgment was vacated defendants then desired to defend this action upon the ground of the pendency of the former action, they should have prayed to amend their answer. This would undoubtedly have led to the consolidation of the two actions. The ends of justice require the determination of this appeal upon the merits.

[2] The one question presented by the facts herein is whether or not Potter was a good-faith purchaser under section 2448 and 2452, C. C., which reads as follows:

"Sec. 2448. Good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious."

"Sec. 2452. Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself."

The evidence establishes the fact that Potter gave full value for his conveyance; that he was given an abstract of title showing the two claims of title and showing the judgment in Cowie v. Harker; that he submitted such abstract to competent and worthy attorneys, who assured him that such abstract showed title in Z., Cowie's grantee and Potter's grantor; and that, for the above reasons, Potter was a good-faith grantee, unless he was in possession of information through which he had actual "notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact," which fact, if ascertained, would have revealed to him that Harker was still claiming to be the owner of said land.  Of course it must be conceded that, if Potter had been furnished an abstract showing a warranty deed from Harker to Cowie, and the best of attorneys had assured him of the fact that such abstract showed perfect title to be in Z.; yet, if Potter found Harker to be in possession of said land, or otherwise learned that he was claiming to be the owner of such land, Potter would take conveyance from Z. subject to any rights of Harker.  But defendants contend that such rule of notice has no application to this case because the order vacating the judgment in Cowie v. Harker provided that such vacation of the judgment "shall in no way whatever affect the rights of persons who may have acted upon the faith of the judgment herein, though they may in law be plaintiff's successors in interest."  The fact of the above provision was not to better the position of one who was already a grantee under Cowie, but merely to prevent such a grantee losing any rights which he otherwise would have had.  Although this default judgment stood of record showing an apparent title in Cowie's grantee, yet if Potter had notice that Harker still claimed to be the owner of this land, he had notice that Harker could still seek the vacation of such judgment or take other legal steps to have the title to this land quieted in him.

The day prior to the closing of this deal with Z., Potter made a trip to this land.  According to his own evidence he met one B. at the said land and B. advised him that he formerly leased the land from a man at Mitchell but now understood it was owned by some parties in Armour.  He knew the land had been cropped that year, 1910, as he saw the stacks of recently threshed straw thereon and was advised by B. that he raised the

crop.   He says he did not ask B. whom he rented the land of,
and made no effort to find out from whom he rented it, and that he
made no inquiry as to the party from whom he rented it, who
B. said lived in Mitchell.   There were two parties, S.   and P.,
with Potter on this trip.   These both testified as witnesses for
defendants.   S. testified in substance the same as Potter, except
that he stated that B. advised Potter that "he rented of a man
in Mitchell by the name of Harker, and he had been notified
that it was now owned by parties in Armour."   P.'s testimony
was also in substance the same as Potter's except that, according
to his testimony, Harker's name was given by B.   That B.
farmed this land during 1910 as the lessee of Harker and under
a written lease is undisputed.   This lease was executed in the
fall of 1908 and leased the land for the year 1909, but it was
renewed for 1910 and 1912, and B. continued to work the place
during 1911.

It will be noticed that Potter was not advised by B. that
Harker had ceased to claim to be the owner of such land.   If
Potter had any right to give any consideration whatever to B.'s
statement to the effect that he understood the land was now
owned by some parties at Armour, he was bound to take notice,
either that there was a party claiming to be the owner under
Harker, or else that B. had reference to the party from whom
Potter was buying.   In the one case he was bound to try to
ascertain who the claimant was and the nature of his claim; in
the other case he was bound to know that B.'s lessor was holding
possession of this land through B., although some one at Armour
claimed to be the owner.   This statement by B. as to his under-
standing that some one at Armour now owned the land in no
manner relieved Potter from making the same inquiry he would
have been bound to make if B. had not made such statement.
Having notice that Harker was holding possession of this land
and putting in and harvesting crops thereon after the entry of
the judgment on which Potter was relying, he was bound to
make the same inquiry to ascertain what rights Harker was
claiming as he would have been bound to have made if he was
contemplating purchasing such land relying upon title in Z.
through deed from Harker and had found Harker in possession
of the land.   Bliss v. Waterbury, 27 S. D. 429, 131 N. W. 731.

The law as to "notice" was very fully discussed by this court in Hingtgen v. Thackery, 23 S. D. 329, 121 N. W. 839, wherein will be found the holdings of numerous courts, which holdings are peculiarly applicable to the facts of this case. We think the following quoted in our opinion in the Thackery case to be a peculiarly pat statement of the law:

The "law will not permit him [one] to shut his eyes when his ignorance is to benefit himself at the expense of another, when he would have had them open and inquiring had the consequence of his ignorance been detrimental to himself and advantageous to the other." Doyle v. Teas, 5 Ill. (4 Scam.) 250.

For the error of the trial court in finding that Potter was a purchaser in good faith, the judgment and order appealed from are reversed.

SMITH, J. (dissenting.)   I cannot concur in the conclusion of my majority associates in this case and deem it my duty to state, as briefly as I may, the grounds of my dissent.

Appellant's main contention, and the one on which the majority opinion bases the reversal of the judgment, is that defendant Potter was not a purchaser in good faith: First, because he purchased the land before the expiration of the statutory period within which an appeal could be taken from the judgment quieting Cowie's title as against Harker; second, because prior to his purchase he had notice of circumstances sufficient to put him upon inquiry and charge him with notice of the fact that Harker was making at that time some claim of title to the land.

So far as the record discloses, the only information received by Potter, except that contained in the abstract of title, and the opinion thereon by attorneys employed to examine it, consisted of statements by one Bergakker and another person present when Potter visited the land before purchasing, to the effect that Bergakker had rented the land from a man by the name of Harker, of Mitchell, but understood the land then belonged to parties at Armour. The term of the lease was not stated, nor was there any lease of record, and Bergakker did not even intimate that he was in, or claimed, possession under any lease.

Inquiries suggested by this information could only have disclosed that which appeared upon the public records, and of which Potter was already advised by the recitals of the abstract,

viz. the character and source of Harker's former interest in the land, if any, and that by the default judgment his claims had been adjudged and decreed to be invalid. Was Potter required, as a test of good faith, to ascertain what course Harker intended to pursue—whether he intended to appeal from the default judgment, or to make application to the trial court to vacate the judgment? Suppose Potter had pursued such inquiries, and had ascertained the facts as to Harker's intentions, disclosed by what he did later, viz. that he did not intend to appeal but did intend to make application to vacate the default. In such case, would Potter be required to go further than to consider whether, and to what extent, the title he was about to purchase, would be affected by the proposed vacation of the default judgment? Would his purchase of the land necessarily amount to his taking an unconscionable advantage of another through the forms or technicalities of the law? Civ. Code, § 2448. "Good faith consists of an honest intention to abstain from taking an unconscionable advantage of another." The statute makes good faith a matter of intention.

The trial court found that Potter purchased the land in good faith, and paid full value in cash. It is not perceived how such a purchase could gain him a wrongful or unconscionable advantage. Had he purchased the land at less than its full actual value, the trial court might have found as a matter of fact that Potter had sought or obtained an unconscionable advantage. But if, in fact, he obtained no "unconscionable advantage," it would be idle to say that he must abstain from seeking such advantage. The only possible advantage Potter could gain was to obtain a good title to property for which he was paying full value to an owner whose title had been adjudged to be good by a competent court, and was pronounced good and merchantable by competent attorneys upon whose judgment he was entitled to rely. Assuming the rule to be as held in Mach v. Blanchard, 15 S. D. 432, 90 N. W. 1042, 58 L. R. A. 811, 91 Am. St. Rep. 698, that Potter, as a purchaser, was bound to know the law—what was the law? First, that the judgment in Cowie v. Harker was not final, because Harker still had the right of appeal; second, that Harker might abandon the appeal and apply for a vacation of the default judgment. He must know that the action was to quiet title, and

that after default judgment Harker might be relieved therefrom, if taken through his mistake, inadvertence, surprise, or excusable neglect, and might be permitted to defend the action.  But was he bound to know, as a matter of law, that any facts existed which would entitle Harker to have the judgment vacated? Harker had not asserted any such facts, or made any attempt to vacate the judgment, although personally served with process nearly a year before.  But Potter was also advised by the same statute that, if the default should be vacated, "the defense, if successful, shall be without prejudice to the rights of a purchaser in good faith of the premises from the said plaintiff after the entry of such judgment, and before the filing of the order permitting such defendant to defend."

Did the mere existence of this statutory right of Harker to be relieved from the default judgment, which might or might not have been "taken through mistake, inadvertence, surprise, or excusable neglect," make it impossible for Potter to become a purchaser in good faith?  I think not.  The question of Potter's good faith was one of fact and not of law, and the trial court found:

"That the defendant, John W. Potter, is a bona fide purchaser of said property, for value, without notice of any claimed right of Joseph Harker therein, and that he relied upon the judgment entered in the case of A. E. Cowie v. Joseph Harker at the time he purchased said real property; that he purchased the said real property in good faith of Josephine Zolnowsky, the immeiate grantee of the plaintiff, A. E. Cowie, in the case of A. E. Cowie v. Joseph Harker, after entry of judgment in said action and before the order permitting the defendant Harker to defend said action was executed."

Certainly this court cannot say that this finding is against the preponderance of the evidence.  There can be no doubt but that the finding of the trial court that Potter relied and acted upon the opinion of his attorneys, advising him that Mrs. Zolnowsky's title was a good and marketable title, that he paid full cash value for the land, and had no notice that Harker was actually claiming or asserting any interest or title in the land at the time of his purchase, and that he purchased the property in good faith is sustained by and is not contrary to the preponderance of the evidence.

Appellant relies largely upon the decision of this court in Mach v. Blanchard, supra, in which we hold that one who accepted a mortgage upon land the title to which was in litigation, which was held to be pending until the time for appeal had expired, acquired no rights superior to those of his mortgagor. But in that case, the court, quoting section 5343, Comp. Laws (now section 568, Code Civ. Proc.), said:

"This is a general provision of the law of civil procedure. Its language is plain. Had the Legislature intended that civil actions should be deemed to be pending during the period mentioned for certain purposes only, it would have so expressed itself."

This action, if deemed pending, was pending for certain purposes only, viz., for an appeal, or a motion to vacate the judgment and defend the action. Certainly I think section 9, c. 81, Laws 1905, which applies expressly to this action to quiet title, recognizes the rule contended for by respondent, that when a default judgment is vacated and the defendant permitted to defend, not as a strict legal right, but as a matter of grace or favor, on account of mistake or excusable neglect, acts done in good faith and in reliance upon the judgment ought not to be invalidated by its subsequent vacation. Hunter v. Ruff, 47 S. C. 525, 58 Am. St. Rep. 907; Morris v. Gentry, 89 N. C. 248; Simpson v. Hornbeck, 3 Lans. (N. Y.) 53; Black on Judgments, §§ 355, 169. In the case of Mach v. Blanchard, supra, the court, following Lord v. Hawkins, 39 Minn. 73, 38 N. W. 689, held that the rule which protects purchasers at sales made under executions of judgments had no application to persons who purchase from the plaintiff in actions to quiet title. That decision was prior to the enactment of chapter 81, Laws 1905. Section 9 of that act provides:

"The court may, in its discretion, and upon such terms as may be just, at any time within two years after the entry of judgment, relieve a defendant in such action from the judgment if taken against him through his mistake, inadvertence, surprise or excusable neglect, and allow such party to defend the action, but the defense, if successful, shall be without prejudice to the rights of a purchaser in good faith of the premises from the

said plaintiff after the entry of such judgment, and before the making of the order permitting such defendant to defend"

Under this act, the period within which an application may be made to vacate the default judgment is identical with that within which an action is deemed pending. Under the general statute applied in the Mach case, the action must always be deemed pending within the two years allowed by this act for opening defaults. In that case it was held that in an action to quiet title, one who became a purchaser or incumbrancer of the property in controversy during the pendency of the action must be held to be a purchaser in bad faith, and that such a conveyance or incumbrance did not change the rights of a purchaser pendente lite in good faith, from the plaintiff, after the entry of judgment and before the making of the order vacating the default and permitting the defendant to defend.

The majority opinion holds that Potter was informed by Bergakker that he had rented this land from Harker, and that he was thus advised that Harker was exercising acts or claim of ownership over it in conflict with the Zolnowsky title and knowing from the abstract that Harker had a warranty deed to the land, such facts were sufficient to put Potter upon inquiry and to charge him with knowledge of whatever such inquiry might have disclosed. Bergakker did not inform Potter that Harker was exercising any control over or making any claim to the land, nor did he intimate to Potter that he himself was in possession of the land or was then making any claim as lessee of Harker. But assuming that such inquiries had been made, would they have disclosed any fact showing that Harker then had a subsisting claim or interest in the land? Certainly not, because every right or claim of Harker, and necessarily of any lessee claiming under him, had then been barred and invalidated by a valid, subsisting judgment and decree rendered upon default after personal service upon Harker many months before.

The vital question is whether Potter purchased in good faith, and even if it be assumed that such record disclosed as a legal fact Harker's right to apply for a vacation of the judgment, the fact that he was taking no steps to vacate it, but was apparently acquiescing therein, and the fact that Potter was advised by his attorneys upon whose opinion he relied, in effect that such judg-

ment barred any claim Harker might have had, and that he (Potter) paid full value for the land, were sufficient to sustain the finding of fact that Potter purchased Zolnowsky's title in good faith. Under section 9 of this act, the mere fact that one purchases property in litigation from a plaintiff after he has obtained a judgment by default, and before the making of an order vacating such judgment and with knowledge which the statute gives such purchaser, that the defendant may thereafter apply for such relief, is not conclusive of bad faith, though the burden may rest upon the purchaser to show his good faith, and thus bring himself within the class of persons intended to be protected by the statute.

I am firmly convinced that the judgment should be affirmed.